IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 7** |
| | : | |
| **CHONG WOO YI** | : | **BANKRUPTCY NO. 19-14866(MDC)** |
| | : | |
| Debtor | : | |
| | : | |

**MOTION OF CHRISTINE C. SHUBERT, CHAPTER 7 TRUSTEE,
FOR APPROVAL OF A SETTLEMENT AGREEMENT BETWEEN THE
TRUSTEE AND THE DEBTOR**

Christine C. Shubert, Chapter 7 Trustee (the "Trustee") for the estate of Chong Woo Yi (the "Debtor"), by and through her counsel, Karalis PC, hereby moves (the "Motion") this Honorable Court for approval of a settlement agreement (the "Settlement Agreement") between the Trustee and the Debtor (at times, the Trustee and the Debtor are collectively referred to herein as the "Parties"), and in support thereof, respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O).

3. The statutory basis for the relief requested herein is 11 U.S.C. § 105(a) and Fed.R.Bankr.P. 9019.

**BACKGROUND**

**I.    Procedural Background**

4. On August 1, 2019 (the "Petition Date"), the Debtor filed for protection under Chapter 7 of the Bankruptcy Code.

5. On the Petition Date, the Trustee was appointed and is so acting.

## II. Residential Real Property Owned by the Bankruptcy Estate

6. The bankruptcy estate owns residential real property located at 15137 Kallaste Drive, Philadelphia, PA 19116 [Tax ID 583165454] (the "Property").

7. On the Debtor's Schedule "A/B", the Debtor indicated that the Property has a fair market value of $175,000.00.

8. The Property is encumbered by a mortgage in the approximate amount of $150,000.00 held by Wells Fargo Home Mortgage.

9. There are no other liens or claims encumbering the Property.

10. The Debtor has claimed an exemption in the Property in the amount of $23,675.00.

## III. Employment of Real Estate Broker

11. On September 9, 2019, the Trustee filed an Application to Employ RE/MAX 2000 as Broker (the "Broker") Pursuant to 11 U.S.C. § 327 and Fed.R.Bankr.P. 2014 (the "Employment Application") [D.I. 26].

12. On October 10, 2019, this Honorable Court entered an Order approving the Employment Application [D.I. 33].

## IV. Agreement of Sale

13. On October 14, 2019, the Trustee entered into an Agreement for the Sale of Real Estate with Viktor and Galyna Goroshko (collectively, the "Purchasers") to sell the Property to the Purchasers for a purchase price of $240,000.00.

## V. Sale Motion

14. On October 16, 2019, the Trustee filed the Motion for Authority to: (1) Sell Residential Real Property Located at 15137 Kallaste Drive, Philadelphia, PA 19116 [Tax ID

583165454] Free and Clear of all Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363 and (2) Compensate Real Estate Brokers (the "Sale Motion") [D.I. 38].

## VI.   Motion to Compel Access and Vacate the Property

15.   On October 24, 2019, the Trustee filed the Motion for Entry of an Order (I) Compelling Debtor to Grant Access to Residential Real Property located at 15137 Kallaste Drive, Philadelphia, PA 19116 [Tax ID 583165454] and (II) Compelling Debtor to Vacate the Residential Real Property (the "Access and Vacate Motion") [D.I. 45].

16.   As set forth in the Access and Vacate Motion, the Trustee seeks the entry of an Order, *inter alia*, (i) compelling the Debtor to provide access to the Property, (ii) compelling the Debtor to provide a key to the Property, and (iii) compelling the Debtor to vacate the Property.

## VII.   Motion filed by the Debtor to Convert Case to Chapter 13

17.   On October 29, 2019, the Debtor filed the Motion to Convert Bankruptcy Case from a Chapter 7 to a Chapter 13 Matter (the "Conversion Motion", and together with the Sale Motion and the Compel and Vacate Motion, the "Motions").

18.   On October 29, 2019, the Trustee filed an Objection to the Conversion Motion.

19.   The Parties have reached a settlement in accordance with the terms and conditions of the Settlement Agreement resolving all issues relating to the Motions. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "1" and incorporated herein.

## TERMS OF SETTLEMENT AGREEMENT

20.   The terms and conditions of the Settlement Agreement provide, *inter alia*, as follows:

   (a)   Subject to the terms and conditions set forth in the Settlement Agreement, the Trustee consents to the Debtor converting his bankruptcy case to one proceeding under Chapter 13.

(b) The following creditors shall have allowed Chapter 7 administrative expense claims (the "Admin Claims") in the following amounts:

    i. Trustee = $15,250.00 (statutory commission pursuant to 11 U.S.C. § 326(a) on lost disbursements of $240,000.00);

    ii. Karalis PC (counsel to the Trustee) = $9,488.55 (legal fees and costs in the amount of $8,846.05 through the execution date of the Settlement Agreement plus $592.50 in future legal fees and $50.00 in future costs related to the drafting and service of a motion to approve the Settlement Agreement along with a potential Court appearance);

    iii. Broker = $4,000.00 (fees associated with the time spent by the Broker in connection to the potential sale of the Property); and

    iv. Purchasers = $1,095.00 (out-of-pocket costs spent by the Purchasers consisting of an appraisal fee in the amount of $500.00, title work in the amount of $200.00, and broker fee in the amount of $395.00).

(c) The Trustee has no objection to the Debtor's proposed Chapter 13 Plan (the "Plan") attached to the Settlement Agreement as Exhibit "A".

(d) The Debtor shall file the Plan (in substantial conformity to Exhibit "A") after the entry of an Order approving the Settlement Agreement.

(e) The Plan provides, *inter alia*, as follows:

    i. The Admin Claims are afforded priority status pursuant to 11 U.S.C. § 503(b) and will be paid in full over the life of the Plan and

    ii. The sum of $17,000.00 will be paid to general unsecured creditors over the life of the Plan.

(f) In the event the Plan is not confirmed within seven (7) months after the entry of a Final Order approving this Settlement Agreement, the Debtor shall immediately convert back to Chapter 7 and consents to a motion to convert filed by any party-in-interest.

(g) In the event the Debtor defaults on any Plan payment, the Debtor shall immediately convert back to Chapter 7 and consents to a motion to convert filed by any party-in-interest. Notwithstanding the foregoing, the Debtor shall have ten (10) days to cure any Chapter 13 Plan default.

    (h)    The Debtor shall not move to dismiss his bankruptcy case.

    (i)    The Debtor is precluded from any attempt to refinance the Property in the Chapter 13 case to increase the mortgage amount or otherwise encumber the property.

    (j)    The Debtor shall keep current on all mortgage payments, real estate taxes, and other costs related to the Property.

    (k)    The Debtor shall keep the Property in its current state of repair.

    (l)    The Trustee shall return the deposit monies in the amount of $5,000.00 to the Purchasers.

*See*, Exhibit "1".

21. The discussion of the terms contained in the Settlement Agreement is intended as a summary only and all parties in interest are encouraged to read the Settlement Agreement. To the extent that there are any discrepancies between the summary contained in the Motion and the terms contained in the Settlement Agreement, the terms of the Settlement Agreement shall control.

## RELIEF REQUESTED AND THE BASIS THEREFOR

22. Federal Rule of Bankruptcy procedure 9019(a) provides "on motion by the Trustee and after notice and a hearing, the Court may approve a compromise or settlement. The decision to approve or disapprove a settlement is within the sound discretion of the bankruptcy judge." *See, In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996).

23. The Trustee seeks approval, pursuant to Bankruptcy Code § 105 and Fed.R.Bankr.P. 9019, of the settlement of the claims among the Parties as set forth in the Settlement Agreement.

24. In *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968), the Supreme Court instructed as

to those factors to be considered in determining whether to approve a settlement. The factors outlined by the Supreme Court in Anderson have been uniformly summarized as follows:

(a) the probability of success in the litigation;

(b) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it;

(c) the difficulties, if any, to be encountered in the matter of collection; and

(d) the paramount interest of the creditors.

*See, Martin*, 91 F.3d at 393; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *In re Pennsylvania Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987).

25. Bankruptcy Rule 9019 authorizes this Court to approve the Settlement Agreement entered into by the Trustee. The decision whether to accept or reject a compromise is committed to the sound discretion of the Bankruptcy Court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *See, Louise's*, 211 B.R. at 801. *See also, In re Neshaminy Office Building Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

26. The settlement need not be the best that the debtor could have achieved, but must only fall "within the reasonable range of litigation possibilities." *See, In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979). In making its determination, a court is not to substitute its own judgment for that of the debtor. *See, Neshaminy Office Bldg.*, 63 B.R. at 803. Moreover, it is not necessary for the court to conduct a truncated trial of the facts of the merits underlying the dispute. *See, Grant Broadcasting*, 71 B.R. at 396. *See also, In re A&C Properties*, 784 F.2d 1377, 1384 (9th Cir.), *cert. denied*, 479 U.S. 854 (1986). Rather, the court need only "canvass the issues to see whether the settlement fall[s] below the lowest point in the range of

reasonableness." *See*, *Neshaminy Office Bldg.*, 62 B.R. at 803, *quoting*, *In re W.T. Grant Co.*, 4 B.R. 53, 69 (S.D.N.Y. 1977).

27. In the present case, the Settlement Agreement falls within the range of reasonableness for purposes of satisfying Fed.R.Bankr.P. 9019 criteria.

28. Not only would further litigation be costly and time consuming for the Trustee and the Debtor's estate, there are uncertainties in connection with the resolution of these claims including the potential for appeals, which could delay the final determination of these matters for a protracted period of time.

29. The Trustee believes that, in light of the complexity and the expense of the dispute between the Parties, the Settlement Agreement is in the best interest of the Trustee, the Debtor's estate and the creditors.

30. Specifically, the Debtor is required to pay $17,000.00 to general unsecured creditors over the life of the Plan. While the Bar Date does not pass until December 10, 2019, the current general unsecured claims filed to date total $44,052.46. The Debtor's scheduled general unsecured claims total $64,492.00. As such, the general unsecured creditors should receive a meaningful distribution as a result of the Settlement Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Trustee respectfully requests the entry of an Order (a) approving the Settlement Agreement and (b) granting such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**KARALIS PC**

By: /s/ Robert W. Seitzer
Robert W. Seitzer, Esquire
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Trustee

Dated: November 6, 2019